UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LLOYD A. RICHARD                                    CIVIL ACTION

VERSUS                                             NO. 08-1399

SHERIFF WILLY J. MARTIN, JR., ET AL.              SECTION "I" (2)

## ORDER ON MOTIONS,
## AND REPORT AND RECOMMENDATION

Plaintiff, Lloyd A. Richard, is a prisoner currently incarcerated in the St. James Parish Prison system.  He filed this complaint, as amended, pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against St. James Parish Sheriff Willy J. Martin, Jr., Chief Deputy Heria Williams, Detective Claude Louis, Officer John Dunn, Officer John Doe, St. James Parish President Dale Hymel, Assistant Warden Edward Scott, Warden Farin Scioneaux, Canteen Manager Roxie Batiste, Jailer Hank Steib and Corporal Osborne Wallace.  Plaintiff's complaint alleges that he received constitutionally inadequate medical care for injuries he suffered in a transport van accident.  He also claims in his complaint that defendants retaliated against him for filing grievances concerning the lack

of medical care after the accident.  Complaint, Record Doc. No. 12 at p.1-7; Amended Complaint, Record Doc. No. 13.

On July 10, 2008, I conducted a telephone conference in this matter.  Participating were plaintiff pro se, and Fred Schroeder, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

The court deferred ruling on two motions that plaintiff subsequently filed.  On August 19, 2008, Richard filed a Motion for Leave of Court to amend his complaint to add an unidentified defendant.  Record Doc. No. 46.  The court ordered defendants to file their opposition memoranda, if any, no later than September 16, 2008.  Record Doc. No. 48.  None were filed.

On September 10, 2008, plaintiff filed a Motion for Leave of Court to amend his complaint to "direct all statement[s] that was [sic] toward John Dunn, be directed to Officer Donald Hawthorne," "that all statement[s] in his complaints and amended complaints to John Doe, be directed to Evans Joseph" and to "add negligen[ce] by Donald Hawthorne." Record Doc. No. 51.  The court ordered defendants to file their opposition memoranda, if any, no later than October 21, 2008.  Record Doc. No. 54.  No opposition memoranda were filed.

On October 30, 2008, defendant Hymel filed a motion for judgment on the pleadings. Record Doc. No. 56. Parish President Hymel argues that the Sheriff, not the Parish, is responsible for operation of the jail and that, as a matter of law, the Parish President cannot be liable for any of the acts about which Richard complains. Plaintiff was ordered to file his opposition memorandum, if any, by November 14, 2008. Record Doc. No. 59. He did not file any opposition.

### THE RECORD

During the July 10, 2008, Spears hearing, Richard testified that he was arrested on January 26, 2008 and charged with aggravated battery and attempted murder. He stated that he was awaiting trial on his criminal charges and that the trial was scheduled for August 19, 2008.

Plaintiff confirmed that he asserts two claims in this case: (1) He did not receive timely medical attention for injuries suffered in a transport van accident on January 26, 2008. (2) Some defendants retaliated against him for complaining about the lack of medical care by locking him in solitary confinement and denying him items such as paper and stamps, which he needed to file the instant complaint.

Richard testified that the accident occurred while he was being transported to the jail following his arrest. He said that the driver of the van, whom he identified as Officer Dunn, was talking on his cell phone and backed the van into a drainage ditch on the side

3

of the road.  Plaintiff stated that he could only identify the officer because he asked the officer his name and the officer replied, "Dunn."  He said that the accident happened because Officer Dunn was not paying attention.

Richard said that he was handcuffed behind his back and that he was tossed from one side of the van to the other during the accident.  He testified that he suffered injuries to his back and neck.  He said he did not suffer any broken bones or lacerations, but his neck hurt, as if he had sprained it.  He testified that he was placed in a different transport vehicle after the accident and taken to the jail.

Plaintiff stated that several people were present at the scene of the accident, including Officer Dunn, Chief Deputy Heria Williams, unidentified Officer John Doe (the driver of the new transport vehicle) and Detective Claude Louis.  He alleged that these defendants are all responsible for refusing to send him for immediate medical treatment.

Richard testified that he asked to see the doctor when he arrived at the jail, but that he was not examined by a doctor until February 14, 2008, about three weeks after the accident.  He said that, after he sought an order from the state court to be seen by a doctor, Assistant Warden Scott ordered on February 6, 2008 that he be sent to the doctor. He stated that he was taken from the jail to Dr. Poche's office on February 14, 2008, and that he saw the doctor about every three weeks after that for a total of seven visits.  He

4

said Dr. Poche examined him, prescribed pain medication and gave him some exercises for his back.  He testified that he has asked Dr. Poche to order an MRI, but Dr. Poche has not done so.  Plaintiff stated that he still receives treatment and prescription medications for his back problems.  He testified that he also had received treatment from nurses at the jail, who provided him with medication for his headaches, back pain and high blood pressure.

Concerning his retaliation claim, Richard testified that Corporal Wallace was the relieving officer the night that Officer Steib put him in solitary confinement, although he had not been written up for a disciplinary violation or found guilty of anything by a court. He stated that Corporal Wallace relieved Officer Steib at 2:00 a.m. that night and could have released him from solitary confinement once Corporal Wallace found out that plaintiff had not done anything to warrant the confinement, but Corporal Wallace continued the punishment.

Plaintiff testified that he asked Officer Steib on April 16, 2008 to take his administrative grievance concerning his medical care to "the next level."  He said that, when Officer Steib returned, he told plaintiff that he had taken plaintiff's letter to Assistant Warden Scott, who was reading it.  Richard testified that Officer Steib later told him that Assistant Warden Scott had refused his grievance.  Plaintiff said that he believed Assistant Warden Scott's action was in retaliation for filing this lawsuit.

5

Richard stated that, after Officer Steib returned, he ordered plaintiff to come with him and placed him in solitary confinement.  Plaintiff testified that he was kept in solitary confinement for about thirteen (13) hours, from about 4:00 p.m. on April 16, 2008 to about 5:00 a.m. the next day.  He said that, during that time, he was deprived of privileges, such as a bed, a mattress and televison; was denied access to his legal work; and was denied his prescribed muscle relaxer and pain medications.  He testified that he had received his medications at noon that day and received them again when he was released about 5:00 a.m.  He said he normally received the medications three times a day, so he missed one dose while he was in solitary confinement.  Plaintiff stated that he had to stand up the entire twelve (12) to thirteen (13) hours in the four-foot by eight-foot cell. He said the cell only had a hole in the floor for a toilet, which was smelly.  He testified that he believes his placement in solitary confinement was in retaliation for filing the grievance.

Plaintiff testified that, on March 10, 2008, Roxie Batiste, the canteen manager at the jail, refused to provide him with "indigent supplies," such as stamps, paper and copies, for the filing of papers in this lawsuit.  He stated that her failure to respond to his request form for supplies was retaliation because she knew that he was filing a lawsuit against the officers at the jail.  He testified that he also gave Batiste a statement of inmate account form for Warden Scioneaux to sign, and that the form was not returned to him

until March 19, 2008, one day before the court-ordered deadline to file the form in this court.  He stated that, pursuant to jail procedures, he wrote to Batiste about getting a return visit to the doctor after the February 14, 2008 doctor visit, but that those letters were never answered.

Richard testified that he named Warden Scioneaux as a defendant because he is the head warden.  Plaintiff stated that Warden Scioneaux never answered plaintiff's six letters complaining about Batiste's actions and about the jail's failure to send him to the doctor.

Plaintiff said that Sheriff Martin was not directly or personally involved in the events that happened to him at the jail, but he named the Sheriff in the lawsuit because he was the "controlling officer."  He stated that Sheriff Martin failed to ensure that his employees, the jailers and the police officers, were properly trained in providing medical attention for prisoners.  He also testified that Sheriff Martin failed to respond to any of his letters of complaint.  Plaintiff stated that he named Dale Hymel, in his official capacity as Parish President, as a defendant for failing to ensure that the jailers provided prisoners with adequate medical attention.  However, he testified that Hymel was not personally involved in any of the actions concerning plaintiff at the jail.

Sheriff Martin provided the court with certified copies of plaintiff's medical records from the jail and from Dr. Poche's office through July 17, 2008.  The records have been filed in the court's record under seal.  Record Doc. No. 44.

The medical records reveal that Richard first submitted a written request for medical attention for back pain on January 29, 2008.  He was seen by a nurse on February 8, 2008, was given ibuprofen to take four times daily and was referred to the doctor.  He submitted another medical request form on February 13, 2008, complaining of back and neck pain and a toothache.  Richard was examined by Carl Poche, M.D., on February 14, 2008.  Plaintiff reported that he had not experienced pain immediately after the motor vehicle accident, but he later felt mid-back pain and some pain and stiffness on the right side of his neck.  He said that the neck pain was getting better.  Dr. Poche found that plaintiff had lumbar tenderness with a suggestion of spasm, and that he had full range of motion in his head and neck.  Dr. Poche diagnosed a strain of plaintiff's lumbar and right trapezius muscles and prescribed Naproxen[1] and Flexeril.[2]

---

[1]Naproxen is a non-steroidal anti-inflammatory drug ("NSAID") used to treat fever and pain, including pain caused by arthritis, headache, backache and toothache.  PDRHealth, available at http://www.pdrhealth.com/drugs/otc/otc-mono.aspx?contentFileName=DNX0163.xml&contentName=NAPROXEN+SODIUM&contentId=3408.

[2]Flexeril (generic name:  cyclobenzaprine hydrochloride) "is a muscle relaxant prescribed to relieve muscle spasms resulting from injuries such as sprains, strains, or pulls."  Id. at http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Fle1179.html&contentName=Flexeril&contentId=241.

Plaintiff submitted a medical request form on February 29, 2008, stating that he had been on and off the medication and was still having pain.  The records do not reflect any response to this request.

On April 9 and 18, 2008, Richard submitted medical request forms, complaining of neck and back pain.  Both times, he was seen by the nurse the same day and given one pack of ibuprofen to take every four to six hours as needed for pain.  The nurse also recommended that he be given a pillow.  On April 25, 2008, plaintiff was seen by another doctor.  Although the doctor's diagnostic notes are illegible, plaintiff was given prescriptions for Voltaren[3] and Parafon Forte DSC[4] and told to exercise.

The records reflect that plaintiff was seen by a nurse and/or Dr. Poche on May 8, June 11, June 12, June 30, July 2, July 3, July 16 and July 17.  During that period, Dr. Poche found that Richard's neck symptoms had resolved.  Although plaintiff continued to have chronic lumbar pain, he reported that it occurred "off and on," was not steady and was getting better.  On physical examination, he had almost full range of motion in his trunk.  Plaintiff was given ibuprofen each time that he was seen by the nurse.  At each

---

[3]Voltaren (generic name:  diclofenac sodium) is an NSAID "used to relieve the inflammation, swelling, stiffness, and joint pain associated with . . . arthritis . . . ."  Id. at http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Vol1486.html&contentName=Voltaren&contentId=633.

[4]Parafon Forte DSC (generic name: chlorzoxazone) "is prescribed for the relief of . . . severe, painful muscle spasms."  Drugs.com, available at http://www.drugs.com/pdr/chlorzoxazone.html

visit with the doctor, Richard received prescriptions for medications, including Naproxen, Flexeril, Norgesic Forte[5] and medication for high blood pressure.  Dr. Poche also recommended that Richard be given an extra mattress, if possible, and that he perform back exercises.

## ANALYSIS

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

---

[5]Norgesic (generic ingredients:  orphenadrine citrate, aspirin, caffeine) "is prescribed . . . for the relief of mild to moderate pain of severe muscle disorders."  Norgesic Forte is twice the strength of Norgesic. PDRHealth, available at http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Nor1300.html&contentName= Norgesic&contentId=390.

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

11

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a

claim of violation of constitutional rights cognizable under Section 1983 under the broadest reading.[6]

## II.  MERE NEGLIGENCE

To the extent, if any, that plaintiff asserts a claim for injuries sustained in a vehicular accident, he at best asserts a negligence claim, not a claim of civil rights violations cognizable under Section 1983.   Richard's testimony that Officer Dunn backed into a ditch while he was talking on his cell phone, rather than paying attention to his driving, at best states a claim under state tort law that the officer was driving negligently.  Claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328 (1986); Davidson v. Cannon, 474 U.S. 344, 347 (1986).  In a number of contexts, other courts have determined that allegations amounting to negligence cannot support a Section 1983 claim.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence insufficient to support

---

[6]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

failure to protect claim under Section 1983); <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); <u>Doe v. Taylor Indep. Sch. Dist.</u>, 975 F.2d 137, 142 (5th Cir. 1992), <u>vacated on other grounds</u>, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a <u>constitutional</u> tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

Prison officials therefore cannot be liable under Section 1983 for the injuries, if any, resulting from the vehicular accident as alleged by plaintiff.  This claim should be dismissed as legally frivolous and for failure to state a claim under Section 1983.  If Richard wants to pursue negligence claims under state law, he is free to do so in state court.

III.   <u>MEDICAL CARE</u>

Richard was a pretrial detainee awaiting trial on attempted murder and aggravated battery charges at all relevant times about which he complains.  Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,

441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather

v. Foti, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care

. . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of

reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel

v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as

recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the
Eighth Amendment to provide both pretrial detainees and convicted
inmates with basic human needs, including medical care and protection
from harm, during their confinement; and (2) that a state jail official's
liability for episodic acts or omissions cannot attach unless the official had
subjective knowledge of a substantial risk of serious harm to a pretrial
detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.  The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show deliberate indifference to his "serious medical

needs" to satisfy this prong.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Mendoza</u>, 989 F.2d at 193.

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id.</u> at 837.  If the court finds that one of the components of the test is not met, it need not address the other component.  <u>Davis</u>, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  <u>Norton</u>, 122 F.3d at 291.

In the instant case,  plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue in this case.  Thus, the "deliberate indifference" standard applies and plaintiff must allege facts

sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, Richard fails completely to allege such facts.

Richard's testimony negates any inference that defendants acted with deliberate indifference to his serious medical needs. Initially, it cannot be concluded that the conditions he described, including neck pain that resolved within a few weeks and chronic mild lumbar pain, presented serious medical needs that posed a substantial risk of harm during his incarceration at St. James Parish Prison.  See Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (inmate who had full range of motion in his shoulder despite continuing pain from old injury did not have serious medical need); Dotson v. Correctional Med. Servs., No. 05-1387-T, 2008 WL 4767805, at *4 (W.D. Tenn. Nov. 3, 2008) (although inmate alleged that he could not walk after ankle injury and that he suffered "severely torn tissue and ligament damage, tendinitis, severely swollen tissue and ligaments, and soft tissue swelling and bone marrow edema," court found that his sprained ankle was not a serious medical need); Sutton v. Nichols, No. 3:05cv395/LAC/MD, 2007 WL 1696109, at *10 (N.D. Fla. June 12, 2007) (inmate's complaint of knee pain after injury and diagnosis of arthritis did not present serious medical need when his knee exhibited full range of motion and all objective tests were normal); Lusk v. Dallas County Sheriff's Dep't, No. 3:00-CV-0662L, 2002 WL

31757706, at *4 (N.D. Tex. Nov. 29, 2002) (herniated disc and degenerative spinal disease not serious medical needs); Nelson v. Rodas, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (back spasms and pain not a serious medical need); Solomon v. Moore, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (plaintiff who was able to walk and function normally despite neck, back and groin pains had no serious medical needs).

Richard's testimony about his injuries resulting from the van accident did not identify any serious risk of harm or any actual harm resulting from the alleged denial of treatment, and these conditions do not rise to the level of serious medical needs for purposes of constitutional analysis.

Even assuming, however, that plaintiff's medical condition was serious, he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials.  Plaintiff's complaint, as amended by his testimony, shows that he received constitutionally adequate medical attention while incarcerated in St. James Parish Prison after the van accident.  Although there was a three-week delay initially after the accident, he was examined by a doctor and other medical personnel on several occasions thereafter over a five-month period, and he was provided with medication for pain.

While it is clear from plaintiff's allegations and testimony that he is not satisfied with the timeliness, quality or effectiveness of his medical care, it is equally clear that the medical care provided was substantial, reasonable and constitutionally adequate. Certainly, no finding of deliberate indifference to serious medical needs can be made based on this record.

Although plaintiff has alleged delay in receiving medical care and has expressed dissatisfaction with the extent or effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.

First, mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.

Wilson, 501 U.S. at 298.  The delay about which Richard complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs).  No such permanent loss resulting from delay has been alleged in this case.

Second, contentions like Richard's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged that treatment received for his broken hand was inadequate failed

to state constitutional violation, when he was examined by physician and received x-rays and medication); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) (although delay in treating plaintiff's broken hand made surgery impractical and may have been negligent, it did not establish constitutional violation); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference); Williams v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (Rainey, J.) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not allege that he suffered any substantial harm from the delay, failed to state a claim for deliberate indifference).

Therefore, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

IV.   RETALIATION CLAIM

Richard asserts that he was retaliated against for submitting administrative grievances concerning the alleged denial of adequate medical care and for filing this lawsuit.   The law in the Fifth Circuit concerning prisoner retaliation claims has

undergone substantial evolution in recent years.  It is based on the following general

principles:

> It is well established that prisoners enjoy a constitutional right of access to
> the courts.  It is equally well established that prison officials may not
> retaliate against a prisoner for exercising this right.  The elements of a
> retaliation claim are the invocation of a specific constitutional right, the
> defendants' intent to retaliate against the plaintiff for his or her exercise of
> that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory
> motive the complained of incident . . . would not have occurred.  With
> respect to the last element, we [have] emphasized that an action motivated
> by retaliation for the exercise of a constitutionally protected right is
> actionable even if the act, when taken for a different reason, may have been
> legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997) (emphasis added) (quotations and

citations omitted).

In Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), the Fifth Circuit, applying the

general First Amendment principles addressed above, affirmed the district court's denial

of defendants' motion for summary judgment, which had sought dismissal of a prisoner's

retaliation claim.  The Fifth Circuit agreed that the inmate's retaliation claim should be

permitted to proceed, but in doing so it expressed the following caution:  "The prospect

of endless claims of retaliation on the part of inmates would disrupt prison officials in the

discharge of their most basic duties.  Claims of retaliation must therefore be regarded

with skepticism, lest federal courts embroil themselves in every disciplinary act that

occurs in state penal institutions." Id. at 1166 (citation and quotation omitted).  The Fifth

Circuit warned that trial courts must "carefully scrutinize these claims."  Id.

> To state a claim of retaliation <u>an inmate must allege the violation of a</u>
> <u>specific constitutional right</u> and be prepared to establish that but for the
> retaliatory motive the complained of incident . . . would not have occurred.
> This places a significant burden on the inmate . . . .  The inmate must
> produce direct evidence of motivation or, <u>the more probable scenario,</u>
> <u>"allege a chronology of events from which retaliation may plausibly be</u>
> <u>inferred</u>."

Id. (citations omitted) (emphasis added).

A year later, the United States Supreme Court reexamined the scope of prisoners'

First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).

The Supreme Court made clear in <u>Lewis</u> that an inmate <u>must establish actual injury</u> to

state a claim for denial of his right of access to the courts.  The Court stated that the First

Amendment right of prisoners to access to the courts is the right to "have a reasonably

adequate opportunity to file <u>non</u>frivolous legal claims challenging their convictions or

conditions of confinement."  <u>Id.</u> at 356 (emphasis added).

A year after <u>Lewis</u>, the Fifth Circuit reviewed another retaliation claim by inmates

in <u>Johnson v. Rodriguez</u>, 110 F.3d 299 (5th Cir. 1997).  In <u>Johnson</u>, a magistrate judge

concluded that certain aspects of the Texas parole system, which permitted parole board

members to consider prisoners' participation in inmate litigation in connection with their

parole determinations, violated the inmates' First Amendment right of access to the

24

courts.  The Fifth Circuit reversed and remanded this portion of the magistrate judge's findings.  Id. at 310-14.  The court again noted the long-recognized rule that prisoners generally enjoy a constitutional right of access to the courts.  Id. at 310.  Quoting the Supreme Court's decision in Lewis, however, the Fifth Circuit held that "[t]his right of access for prisoners is not unlimited . . . ; rather it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."  Id. (emphasis added).  Significantly for present purposes, the Fifth Circuit concluded:  "Thus, neither any frivolous filings nor secondary litigation activity, i.e., legal research and writing . . . , may comprise the basis of a retaliation claim."  Id. (emphasis added).

Richard testified that defendants Steib, Wallace and Scott retaliated against him for filing administrative grievances and this lawsuit by keeping him in solitary confinement overnight for twelve (12) to thirteen (13) hours on April 16, 2008.  He also testified that defendant Batiste retaliated against him on March 10, 2008 when she refused to provide him with supplies necessary to file this suit and when he gave her a statement of account form for Warden Scioneaux to sign, but the form was not returned to him until one day before the deadline to file the form.

However, the chronology of events neither leads to an inference of retaliation nor establishes that plaintiff suffered any actual injury.  Richard's lawsuit was filed in this

court on February 29, 2008.  His initial motion for leave to proceed in forma pauperis was denied because he had not included the required certified statement of his inmate trust account.  On April 2, 2008, the court received plaintiff's renewed motion for leave to proceed in forma pauperis, which he signed on March 7, 2008 and which included a certified statement of his account that had been signed by Warden Scioneaux on March 19, 2008.  Record Doc. No. 6.  The court granted plaintiff's motion on April 18, 2008.  Record Doc. No. 7.  Since then, he has amended his complaint, filed numerous motions and participated in a telephone conference with the court.  Richard has not shown that he has suffered any actual injury in his ability to access this court.

Furthermore, this report recommends that this lawsuit be dismissed as legally frivolous.  As the Fifth Circuit held in <u>Johnson</u>, a frivolous lawsuit cannot comprise the basis of a retaliation claim.  No violation of a specific constitutional right occurred as a result of the allegedly retaliatory acts.

Richard has been afforded full access to this court.  Actionable retaliation cannot occur in response to a legally frivolous lawsuit.  Thus, Richard wholly fails to establish the actual injury/legal prejudice element of his First Amendment claim.  Accordingly, his retaliation claim alleging denial of access to the courts is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.  It must be dismissed pursuant to 28 U.S.C. § 1915(e).

## V.  HYMEL'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff's amended complaint states that Dale Hymel, in his capacity as Parish President, violated his constitutional rights by failing to make sure that Sheriff Martin had properly trained officers working for the parish.  Record Doc. No. 24, at ¶ 10, p. 4. Richard testified that he named Hymel as a defendant for failing to ensure that his jailers provided him with adequate medical attention.

Hymel moved pursuant to Fed. R. Civ. P. 12(c) for dismissal of plaintiff's claims against him.  Record Doc. No. 56.  Although the foregoing recommendation, if accepted, renders Hymel's motion moot, in the alternative, the motion should be granted.

"A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312-13 & 313 n.8 (5th Cir. 2002) (quotation omitted).

> The standard for dismissal for a Rule 12(c) motion for judgment on the pleadings is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).  As set forth by the Supreme Court in Bell Atlantic Corp. v. Twombly, . . . the standard to be applied when deciding a Rule 12(b)(6) motion is not whether it is conceivable that some set of facts could be developed to support the allegations in the complaint, but rather whether the plaintiffs have stated enough facts in the complaint to allow a court to conclude that it is "plausible [on its face]" that the plaintiffs are entitled to

> relief.  The Court must accept as true all well-plead allegations and resolve
> all doubts in favor of the plaintiff.

Wolfe v. Fidelity Nat'l Ins. Co., No. 06-4928, 2008 WL 89643 (E.D. La. Jan. 7, 2008)

(Barbier, J.) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007))

(citing Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004); Tanglewood East

Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572 (5th Cir. 1988)).

Parish President Hymel argues that the facilities, employees and operations of the

St. James Parish Prison are the responsibility of the Sheriff and his deputies, not of the

parish and its officials.  Hymel contends that, as a matter of law, he is not liable to

plaintiff for the actions of the Sheriff or the Sheriff's employees.

Although Hymel has submitted no evidence, his position is correct as a matter of

law.  Under Louisiana law, the administration of a parish jail, including the obligation

to care for, feed and clothe the prisoners, is the exclusive province of the Sheriff, not of

the city or parish where the jail is located.  La. Rev. Stat. §§ 15:704, 33:1435(A); Watson

v. Graves, 909 F.2d 1549, 1551 (5th Cir. 1990); Thompkins v. Belt, 828 F.2d 298, 304

n.8 (5th Cir. 1987); Gorton v. Ouachita Parish Police Jury, 814 So. 2d 95, 104, 106-07

(La. App. 2d Cir. 2002); Langley v. City of Monroe, 582 So. 2d 367, 368 (La. App. 2d

Cir. 1991).

28

Plaintiff has not alleged that Hymel personally took any actions against him.  It is indisputable as a matter of law that Hymel, as Parish President, has no legal responsibility for the claims asserted by Richard, all of which arise from activities allegedly occurring during his incarceration in the parish jail, where his custody was the responsibility of the St. James Parish Sheriff and his deputies.  Thus, Hymel's motion for judgment on the pleadings should be granted and all claims asserted against him should be dismissed with prejudice.

In addition, even if Hymel had never filed his motion, plaintiff has no claim for constitutionally inadequate medical treatment, for the other reasons set out above, and all claims against Hymel should be dismissed on that basis.

## VI.  STATE LAW CLAIMS

Any claims asserted by plaintiff that would constitute negligence under state law are not within this court's supplemental subject matter jurisdiction in the absence of a cognizable federal claim.  If my recommendation to dismiss plaintiff's Section 1983 claims is accepted by the presiding district judge, plaintiff will have no federal claims remaining in this action, and the court will have no supplemental jurisdiction over his state law claims.  28 U.S.C. § 1367(a).

A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has

29

original jurisdiction."  Id. § 1367(c)(3).  The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); accord Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims").

In the instant case, no trial date has been set and the parties have not yet commenced discovery.  These proceedings remain at the earliest screening stage for pro se and in forma pauperis complaints.  No possible basis for federal subject matter jurisdiction is apparent from the face of this complaint.  Accordingly, pursuant to Section 1367(c) and having balanced the relevant factors of judicial economy, convenience, fairness, and comity, the court should decline to exercise jurisdiction over Richard's state law claims and dismiss them without prejudice for all purposes contemplated by 28 U.S.C. § 1367(d).  Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 587 (5th Cir. 1992); Newport Ltd. v. Sears, Roebuck & Co., 941 F.2d 302, 307 (5th Cir. 1991).

## ORDER ON MOTIONS

Plaintiff has filed two motions seeking leave to amend his complaint to add new defendants as to his existing claims and to add a claim of negligence against a new defendant.  Record Doc. Nos. 46, 51.  The policy of the Federal Rules of Civil Procedure is liberal in favor of permitting amendment of pleadings, and the trial court's discretion is not broad enough to permit denial of leave to amend "unless there is a substantial reason" to do so.  Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 598 (5th Cir. 1981).  Thus, "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), but it "is by no means automatic."  Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993) (quotation omitted).  Relevant factors to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."  Id.

"It is within the district court's discretion to deny a motion to amend if it is futile."  Stripling v. Jordan Prod. Co., 234 F.3d 863, 872-73 (5th Cir. 2000) (citation omitted).  Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted. . . .  [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)."  Id. at 873 (quotations and citations omitted).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must

31

plead 'enough facts to state a claim to relief that is plausible on its face.' 'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" In Re Katrina Canal Breaches Litig., 495 F.3d at 205 (quoting Bell Atl. Corp., 127 S. Ct. at 1974, 1965) (footnote omitted).

As discussed fully in the foregoing recommendation, all of plaintiff's existing federal claims are subject to dismissal either as legally frivolous or for failure to state a claim. In addition, just as plaintiff's existing state law tort claims are subject to dismissal for lack of supplemental jurisdiction in the absence of any cognizable federal claim, any new state law negligence claim that he attempts to assert is futile for the same reason.

Plaintiff's proposed amendments are futile. Accordingly, his motions to amend are **DENIED**.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), and that his state law negligence claims be **DISMISSED WITHOUT PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this \_\_\_25th\_\_ day of November, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE