UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LLOYD A. RICHARD                                    CIVIL ACTION

VERSUS                                             NO. 08-1399

SHERIFF WILLY J. MARTIN, JR., ET AL.               SECTION "I" (2)

## FINDINGS AND RECOMMENDATION

Plaintiff, Lloyd A. Richard, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. The United States Court of Appeals for the Fifth Circuit previously affirmed this court's dismissal of all claims against all defendants, except that the appellate court remanded the matter to this court for further proceedings as to a single claim against two defendants. Record Doc. No. 88. Thus, the only remaining defendants on the date of trial/evidentiary hearing were Hank Steib and Osborne Wallace. The only remaining claim is that, while Richard was incarcerated in St. James Parish Jail, defendants retaliated against him for filing a grievance about his medical care by placing him in solitary confinement for about 13-15 hours on April 16-17, 2008. Record Doc. No. 88 at p. 4.

Trial/evidentiary hearing was conducted on January 20, 2011 before the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

73.2(A).   Plaintiff appeared pro se and participated by telephone.   42 U.S.C. §

1997(e)(f)(1).  Jason Wixom, appearing in person, represented the defendants.

For the following reasons, **IT IS RECOMMENDED** that plaintiff's claims be

**DISMISSED WITH PREJUDICE** and judgment entered for defendants.

I.   <u>EVIDENCE AT TRIAL</u>

Plaintiff himself was his only witness.  Both defendants testified in person, as did

Warden Faron Scioneaux and Assistant Warden Edward Scott, Jr., for the defendants.

The following is a summary of the evidence:

A.   <u>Plaintiff's Case-in-Chief Testimony</u>

Richard testified that he was convicted of murder on April 21, 2010 and is serving

a sentence of 80 years in prison.  He said he was transferred to the Louisiana State

Penitentiary in Angola the day before the trial/evidentiary hearing in this matter.

Richard stated that, on April 16, 2008, he was incarcerated at the St. James Parish

Jail awaiting his criminal trial.  He said that he was in his cell when defendant Deputy

Steib, a guard, was making his rounds of the cells.  Plaintiff testified that he asked Steib

to place plaintiff's request for administrative remedy procedure ("ARP") in the Sheriff's

box to go to the next step in the procedure.  Richard said that the Warden had already

received this grievance.

Plaintiff testified that Steib came back about 20 minutes later, removed him from his cell and took him to the "hole," a solitary confinement cell.  Richard stated that Steib pushed him into the hole and said, "That's for writing everybody up."

Richard said that his grievance, which had been filed previously with Assistant Warden Scott and Warden Scioneaux, concerned prison officials' alleged denial of medical attention when plaintiff arrived at the Jail after being arrested.  He described "the hole" as a cell with no mattress, where the inmate has to urinate in a hole in the floor. He said that Steib refused to give him a mattress, but that Deputy Wallace brought him a mattress about five hours later.  Plaintiff testified that he was alone and that he was denied his books and his medication while he was in this cell.

Richard stated that he asked defendant Wallace why he was in the hole when Wallace came on shift.  Plaintiff said that Wallace said he would find out, but Wallace did not come back until about 3:00 a.m.  Richard testified that he asked Wallace for his medication, which he was taking for neck and back pain, but that Wallace would not give it to him because Wallace said he did not know whether plaintiff had already taken his medicine.  Plaintiff testified that, when Wallace took him out of the hole, Wallace told him there would be new rules when he returned to his cell.

Richard said he suffered damages during his time in the hole because he could not call anyone to keep up with his ARP or a lawsuit that he had previously filed against the

Sheriff.  He testified that his pre-existing neck pain was aggravated when Steib pushed

him.  He stated that he was put into the hole about 2:00-2:30 p.m. and was released about

4:30-5:00 a.m. by Wallace, who escorted him back to his cell.

On cross-examination, plaintiff testified that he had previously been convicted of

accessory to armed robbery and murder in 1987 and had served six or seven years of that

sentence.  He said he was released around 1996.[1]

Richard said that he filed a grievance concerning his placement in solitary

confinement on April 16, 2008 and that he has a copy of his grievance.  He testified at

trial that, during the pretrial conference with the court, he did not have a copy of the

grievance with him, which is why he stated under oath during the conference that he did

not have a copy of the grievance.  See Record Doc. No. 115 at p. 2 (Plaintiff "stated

under oath during the conference that, although he filed three (3) ARP grievances

concerning his solitary confinement claim, he is in possession of none of them.").

Richard testified at trial that he had submitted a copy of the grievance with several

motions that he had sent to the court in this action.

---

[1]Because of the time period involved in the conviction and completion of sentence on this old
conviction, it is not admissible in evidence, Fed. R. Civ. P. 609(b), and I have not considered it in
assessing credibility or anything else.

B.    Defendants' Case-in-Chief Witness Testimony

    1.    Testimony of Hank Steib

Steib testified that he was employed by the St. James Parish Sheriff on April 16, 2008 and that he placed Richard in the holding cell on that date.  Steib stated that plaintiff was "wracking the gates," which meant that plaintiff was kicking the gate of his cell, because Steib had refused plaintiff's request that he make copies of plaintiff's ARP form for delivery to the Warden.  Steib said he told Richard that it was not his duty to make copies, but he also told Richard to "hold on" while Steib went to talk to his supervisor.

Steib stated that, before he could get to his supervisor, Richard started making a disturbance by wracking the gates.  Defendant said he then told Richard to "walk with me," and he put Richard in solitary confinement for a few hours.  Steib testified that it was not his job to make copies for inmates and that he told Richard that he could not make the copies for him.  He said Richard responded, "Then some-fucking-body gonna do it."

Steib stated that he unlocked the gate of plaintiff's cell and escorted plaintiff to the holding cell.  He testified that he did not shove Richard into the cell and that Richard walked into the cell.  He explained that he put plaintiff into the holding cell because Richard was kicking his cell gate and making a disturbance, not because plaintiff had

5

filed a grievance.  Steib said that plaintiff's cell had a buzzer to press for an intercom so he could request assistance and that plaintiff should have used that system.  Steib stated that Richard's behavior was "too unruly" and that he put Richard in the holding cell to "cool off."

Steib did not recall what time he took plaintiff to the holding cell.  He testified that it was "kind of early" and that plaintiff stayed there for less than five hours.  Steib said he worked his shift from 6:00 a.m. to 6:00 p.m. on April 16, 2008, and that Richard was let out of the holding cell and put back in his own cell before Steib left for the day.

Steib stated that he did not write a report about the incident.  He explained that no report was warranted because plaintiff's placement in solitary confinement was brief, temporary and intended solely to let plaintiff cool off.  Steib testified that Wallace did not relieve him that day.

On cross-examination, Steib stated that he personally released Richard from solitary confinement before 6:00 p.m. and that Richard had been in the holding cell for less than five hours at that time.  He testified that Shift 2 relieved him that day and that he did not know the names of the officers on Shift 2.  He reiterated that Wallace did not relieve him that day.

2.    Testimony of Osborne Wallace

Wallace testified that he was employed by the St. James Parish Sheriff on April 16-17, 2008.  He said he did not remove Richard from the holding cell on that date. He stated that he worked on Shift 3 and was not at the Jail on that date.  He testified that he did not know who released plaintiff from the holding cell.

On cross-examination, Wallace testified that he neither released plaintiff from the holding cell nor put plaintiff back in his cell on April 16 or 17, 2008 because Wallace was not at the Jail on that date.  He stated that he did not see any ARP grievance that plaintiff wrote on April 16, 2008.

3.    Testimony of Warden Faron Scioneaux

Scioneaux testified that he is employed as the warden of the St. James Parish Jail and was so employed throughout 2008.  He said that the Jail had an available ARP in April 2008, which inmates could use to proceed with allegations against corrections officers or other complaints.  He stated that, to use the ARP, an inmate requests a form from a corrections officer, fills it out and returns it to the Assistant Warden.  Scioneaux said that the ARP is that the Assistant Warden investigates the complaint and passes it on to the Warden if further review is needed.

Scioneaux stated that it is not the job of corrections officers at the Jail to make copies of a grievance for the inmate.  He testified that, if an inmate asks for a copy, the

request is forwarded to the Assistant Warden's or Warden's office, where copy machines are located.

Scioneaux testified that, to his knowledge, Richard never filed a grievance about the April 16, 2008 solitary confinement incident.

On cross-examination, Scioneaux testified that an inmate can give an ARP form to any guard on duty, who is supposed to deliver the form. Scioneaux stated that he did not receive any ARP from plaintiff about the April 16, 2008 solitary confinement incident. He said that Richard was always respectful to him and that he never received any write-ups about plaintiff.

### 4.   Testimony of Assistant Warden Edward Scott, Jr.

Scott testified that he was Assistant Warden throughout 2008 and that he reviews inmate grievances. He stated that he never received any grievance from Richard about being placed in solitary confinement on April 16, 2008.

On cross-examination, Scott testified that he has known Richard for about 45 years. He stated that he did not receive any ARP grievance from plaintiff on April 17, 2008.

### C.   Exhibits

Plaintiff's Exhibit 1 was already in the record at Record Doc. No. 117, pp. 2-4, and was admitted into evidence. It consists of three pages entitled "St. James Parish Sheriff's

Office Detention Center Log," which were provided to plaintiff and the court by counsel for defendants.  There was no testimony introduced concerning these documents, but Richard asserted in his closing argument that these pages contradict the testimony of Steib that he released plaintiff from the holding cell by 6:00 p.m. and the testimony of Wallace that he did not remove plaintiff from the holding cell because he was not working that day.

Each page of the log contains a line of blanks across the top, which are filled in with a handwritten name, shift number, date and time.  The rest of the page contains six columns, apparently of cell numbers and cell names, with handwritten names inserted into the columns under each cell number or cell name.  Each page has been partially cut off by the copying process, so that the handwritten information in the columns on the left and right edges of the pages is incomplete on each page.

Neither Steib's nor Wallace's name appears to be on any of the pages.  The handwriting on the first and third pages is particularly difficult to read.

The first page is headed by the name "Bourgeois," which is presumably the name of the deputy who prepared it.  The blanks at the top are filled in with "Shift 4," the date 4/16/08 and a time that looks like 1.3 or 13 hours.  It is possible that the name "Lloyd Richard" appears under cell number 182F as one of two inmates under that cell number.

The second page, which is in a different handwriting than the first page, is headed by the name "Hamilton," "Shift III" and the date 4/16/08 at 1800 hours.  The partially cut-off name "Lloyd Ric" appears in the far right column under the heading "Drunk Tank" in cell number 137.  There is only one inmate listed under cell number 182F on this page, and it clearly is not Lloyd Richard.

The third page, in the same handwriting as the first page, is headed "Bourgeois," "Shift 4" and dated 4/17/08 at 0625 hours.  A different name (possibly Scott Smith) is inserted in the far right column under the heading "Drunk Tank" in cell number 137, while it is possible that one of the two names listed under cell number 182F is Lloyd Richard.

Although plaintiff testified that he submitted an ARP grievance concerning the solitary confinement on April 16, 2008 and that copies of his ARP grievances are in the court's record, my thorough review of the record discloses no copies of any grievance about that incident.

II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

    A.    Failure to Exhaust ARP

Defendants argued at trial that Richard failed to exhaust the available ARP concerning his retaliation claim and that his failure to do so bars his claim in this court. Warden Scioneaux and Assistant Warden Scott both testified that they never received a

grievance from plaintiff concerning the solitary confinement incident on April 16-17, 2008.  Richard testified that he filed a grievance and that he submitted copies of the grievance to this court.

In the Prison Litigation Reform Act of 1996 ("PLRA"), Congress revised the pre-lawsuit exhaustion provision to require that a prisoner complete an available prison ARP before filing a Section 1983 suit and to eliminate the district court's discretion to permit a suit to proceed without exhaustion.  Porter v. Nussle, 534 U.S. 516, 532 (2002) (citing the Civil Rights of Institutionalized Persons Act, 94 Stat. 352, as amended, 42 U.S.C. § 1997(e)).  In short, 42 U.S.C. § 1997(e)(a) now mandates exhaustion of administrative remedies, stating that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a) (emphasis added).

In Clifford v. Gibbs, 298 F.3d 328, 329 (5th Cir. 2002), the Fifth Circuit reiterated the Supreme Court's finding that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Id. (citing Porter, 534 U.S. at 992) (emphasis added).

In finding the facts as to which the foregoing legal principles apply in this case, I find that plaintiff did not pursue or exhaust the available ARP concerning the solitary confinement incident, for the following reasons. First and most importantly, I find that Richard is not a credible witness and that his testimony cannot be credited. His demeanor, tone and combative manner of testifying and otherwise conducting himself during the hearing did not inspire confidence in the substance of what he said. More importantly, at the pretrial conference, Richard "stated under oath . . . that, although he filed three (3) ARP grievances concerning his solitary confinement claim, he is in possession of none of them." Record Doc. No. 115 at p. 2. In direct and self-serving contradiction of that testimony, Richard testified at trial that he has a copy of this grievance and that he previously submitted it to the court with his written submissions. However, my review of the record reveals that no such grievance has ever been filed with the court. Furthermore, Richard is a convicted murderer whose recent conviction for murder may properly be considered in assessing his lack of credibility. Fed. R. Evid. 609(a)(1). His testimony concerning the facts at issue in this trial was in conflict with the testimony of the other, credible witnesses and the documentary record, none of which support or corroborate either the alleged retaliation or the alleged filing of an ARP grievance about the incident. In short, plaintiff's story about the incident that led to the alleged retaliation in this case and about his filing of a subsequent ARP grievance

concerning his placement in solitary confinement was self-serving, uncorroborated by any other credible evidence and cannot be believed.

On the other hand, defendants' witnesses, Steib, Osborne, Scioneaux and Scott, were entirely credible. Their demeanor and their manner of testifying were calm, detached, detailed and highly professional. Viewed in the entirety of the circumstances, I am convinced that their account is credible. Their testimony and the documentary evidence corroborate each other without substantial discrepancies. Thus, I find the testimony of Steib, Osborne, Scioneaux and Scott credible and the testimony of plaintiff not credible.

Based on the credible testimony of the witnesses and the other record evidence, I find that Richard never initiated any grievance and did not exhaust the available ARP at St. James Parish Jail as to the April 16, 2008 incident of solitary confinement. To satisfy this legal requirement, plaintiff must complete the administrative grievance procedure in place at the Jail. It is clear from the language of the statute, from the Supreme Court's decision in Porter and from the Fifth Circuit's decision in Clifford that exhaustion of an available prison ARP is an absolute requirement before filing suit. Because he failed to exhaust the available ARP, Richard is barred from bringing this claim until he has exhausted those remedies.

While a finding of failure to exhaust ARP ordinarily would require a dismissal of the claim without prejudice, Clifford, 298 F.3d at 333, I also find that Richard has failed to prove his claim of retaliation and that it should therefore be dismissed with prejudice, for the following reasons.

B.    Retaliation Claim

Plaintiff asserts a claim of retaliation for exercising his First Amendment right of access to the courts.  Prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels, including an available prison ARP, about a guard's misconduct.  Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006); Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).

The law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years.  It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred.  With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part and reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977);

14

Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164-66) (quotations and additional citations omitted) (emphasis added).

In Woods, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment.  Defendants in that case had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and to the warden of the prison.  The Fifth Circuit agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution:  "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties.  Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions."  Woods, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that "trial courts must carefully scrutinize these claims."  Id.

> To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . .  The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

Id. (citations omitted) (emphasis added).

A year later, the United States Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996). The Supreme Court made clear in <u>Lewis</u> that an inmate <u>must establish actual injury</u> to state a claim for denial of his right of access to the courts.  <u>Id.</u> at 349-50.

In <u>Morris</u>, a case of first impression in the Fifth Circuit, the court addressed "[w[hether an allegation of <u>de minimis</u> retaliatory acts can support a retaliation claim" under the First Amendment.  <u>Morris</u>, 449 F.3d at 684.  The court stated that

> [t]he question, however, is not whether the violation of [plaintiff's] constitutional rights was <u>de minimis</u>, but whether any violation occurred at all.  To establish a constitutional violation, an inmate must show that he suffered a qualifying adverse retaliatory act.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

<u>Id.</u>  The Fifth Circuit held that

> [t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so <u>de minimis</u> that they would not deter the ordinary person from further exercise of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.
> . . . .  Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. . . .
> With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

<u>Id.</u> at 686 (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 588 n.10 (1998)).

16

The Fifth Circuit's reasoning and rulings in <u>Morris</u> accord with the Supreme Court's holding in <u>Lewis</u> that a prisoner who brings a retaliation claim under the First Amendment must allege actual injury in order to assert a claim. Furthermore, the alleged retaliatory acts must be more than de minimis, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights.

Thus, the law in the Fifth Circuit

> is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. Officials likewise may not retaliate against an inmate for using the grievance system. A plaintiff must allege facts showing that the defendant possessed <u>a retaliatory motive</u>. The inmate must show <u>more than his personal belief that he was the victim of retaliation. Mere conclusory allegations of retaliation are not enough.</u> In order to proceed on his claims, a plaintiff must show that the retaliatory adverse act [was] more than a <u>de minimis</u> act.

<u>Decker v. McDonald</u>, No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010) (Craven, M.J.) (citing <u>Morris</u>, 449 F.3d at 687; <u>Jones v. Greninger</u>, 188 F.3d 322, 324-25 (5th Cir. 1999); <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997); <u>Moody v. Baker</u>, 857 F.2d 256, 258 (5th Cir. 1988); <u>Whittington v. Lynaugh</u>, 842 F.2d 818, 820 (5th Cir. 1988); <u>Hilliard v. Board of Pardons & Paroles</u>, 759 F.2d 1190, 1193 (5th Cir. 1985); <u>Ruiz v. Estelle</u>, 679 F.2d 1115, 1153 (5th Cir.), <u>amended in part and vacated in part</u>, 688 F.2d 266 (5th Cir. 1982); <u>Campbell v. Beto</u>, 460 F.2d 765, 768 (5th Cir. 1972)), <u>report & recommendation adopted</u>, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010) (Folsom, J.) (emphasis added).

In this case, I find that the credible evidence establishes no retaliatory motive against Richard on the part of the defendants.  The credible evidence, as opposed to Richard's untrustworthy testimony, negates the possibility of any <u>plausible</u> inference of retaliatory motive from the mere chronology of events.  In finding the facts as to which the foregoing legal principles apply in this case, I find that plaintiff has failed to prove any retaliation, for the following reasons.  For the same reasons discussed above, I find Richard's testimony concerning the alleged retaliatory motive of defendants <u>not</u> credible.  Based on the credible testimony of the defense witnesses and the other record evidence, I find neither any direct evidence of retaliatory motive by Steib when he placed Richard in the holding cell nor a chronology of events from which retaliation may plausibly be inferred.  To the contrary, I find that Steib took Richard to the holding cell for legitimate penological reasons, <u>i.e.</u>, to let plaintiff "cool off" because he was being disruptive by kicking his cell bars and swearing at Steib when Steib declined to make copies for him, a function of the Warden's clerical staff, which was not a part of Steib's job duties as a correctional officer.

I further find that Wallace was <u>not</u> at the Jail at any time when plaintiff was in the holding cell and therefore Wallace had nothing to do with keeping him in or releasing him from the holding cell.  Even if Wallace was at the Jail on that date and even if he did all of the things that plaintiff testified that he did, I find no evidence that Wallace acted

with any retaliatory motive or that his actions in any way could plausibly lead to an inference of retaliation.

In addition, I find that plaintiff stayed in the holding cell for less than five hours, as Steib credibly testified. Even if he stayed in the cell as long as plaintiff himself testified, the action was de minimis and did not rise to the level of a constitutional violation. Richard testified that his only injury from his detention in the holding cell was that he was unable to work on his legal claims because he could not use the telephone or his books.

Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. No person of ordinary firmness would be deterred from filing a grievance or a civil rights lawsuit by such a de minimis action as being unable to work on his legal claims for an afternoon or overnight. Richard himself was not deterred, as he asserted his retaliation claim by amendment in this lawsuit, which was already pending on April 17, 2008, and pursued it via multiple written submissions and the instant trial/evidentiary hearing.

For the reasons discussed above, no violation of a constitutional right occurred when plaintiff was placed in a holding cell for several hours for legitimate penological reasons, not based upon retaliatory motive. Applying this standard, judgment must be

entered in favor of defendants, dismissing plaintiff's sole remaining claim of retaliation with prejudice.

### RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's claims against all defendants be **DISMISSED WITH PREJUDICE** and that judgment be entered against plaintiff and in favor of defendants.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___14th___ day of February, 2011.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

21